IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HENRY WASHBURN,<br><br>    Plaintiff<br><br>v.<br><br>ALEX FAGAN, JR., et al.,<br><br>    Defendants. | No. C 03-0869 MJJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION** |

## INTRODUCTION

Before the Court is San Francisco police officers Alex Fagan Jr. and Walter Contreras' (collectively "Defendants") motion for summary judgment ("Motion") based on qualified immunity in this § 1983 lawsuit arising from Plaintiff James Washburn's arrest. Plaintiff opposes the Motion in its entirety. Oral argument on Defendants' motion was held on May 10, 2005. This Order reflects the Court's careful consideration of the parties' briefs as well as the arguments proffered at the hearing. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## FACTUAL BACKGROUND

Just after midnight on January 27, 2002, Plaintiff was walking home with two roommates, Suzanne and Sebastien Bacharach, while carrying a large base drum and wearing a sunflower hat. Earlier in the evening, Plaintiff had consumed "two or three" apple vodka martinis and half of a large beer. (Washburn Depo. at 119:2-5, 17-18, 125:22.) As Plaintiff walked, he banged on the

drum and was "signing [and] running around." (Washburn Depo. at 128:5, 8-13.) Suzanne Bacharach testified that Plaintiff was banging the drum very loudly and was "screaming at the top of lungs." (Suzanne Depo. at 43:9-10.)

Plaintiff and his housemates approached the intersection of Oak and Divisadero Streets. As Plaintiff crossed the intersection at Divisadero, and just after he passed the median in the center of the intersection, the traffic lights changed. Plaintiff admitted that he was a "few steps" from the median at the time oncoming traffic began moving towards him. (Washburn Depo. at 132:5-7.) Suzanne Bacharach testified that Plaintiff remained in the street for a "few minutes" before returning to the median. (Suzanne Depo. at 53:7-8.) However, she also testified that Plaintiff was in the street for a "few seconds." (Suzanne Depo. at 56:6-7.) Sebastien Bacharach testified that Plaintiff took "two steps" back to the median "really quick."[1] (Sebastien Depo. at 31.)

Defendants witnessed Plaintiff enter the intersection. Plaintiff alleges that Defendants exited their police car and proceeded to tackle him from behind without warning. According to Sebastien Bacharach, the take-down "was well executed and [Plaintiff] found himself on the ground without even having time to think about it." (Sebastien Depo. at 53:9-11.) Plaintiff was handcuffed and placed in the back of a police car. Plaintiff testified that he thought he complained to the police officers about the handcuffs being too tight. While in the back of the police car, Defendants allege that Plaintiff kicked the car's door. Suzanne Bacharach testified that she saw Plaintiff kick the door of the police car. Plaintiff admitted that he spat onto the window of the police car.

Police officers removed Plaintiff from the police car and placed him in a two-piece physical restraint.[2] Plaintiff testified that he did not know what officers placed him in the restraint. (Washburn Depo. at 159:20-21.) After he was placed in restraints, Plaintiff was transported to the county jail in the back of a police van. The leg restraints were removed at the jail. At the jail, Plaintiff did not ask to see medical personnel. (Washburn Depo. at 169:10-11.) Plaintiff was cited

---

[1] Plaintiff admitted that he continued singing and banging the drum after he returned to the median. (Washburn Depo. at 134:9-13.)

[2] According to Defendants, the two-piece restraint was actually two different devices. One was the "hobble," a cord that wraps around the ankles. The other was a "wrap," a nylon-mesh blanket that wraps around the legs and straps and secures with Velcro fasteners. (Deposition of Brett Kaczmarczyk at 32:2-12.)

2

for resisting arrest, public intoxication, and jaywalking.

Two days after the incident, Plaintiff saw a private physician, Dr. Mark Oscherwitz. The doctor observed a "bruise on the right inner arm, quarter of an inch by two inch" and a two-and-half inch abrasion to the right check." (Oscherwitz Depo. 11:2-6.) Dr. Oscherwitz concluded that Plaintiff's injuries were "superficial" and "would resolve spontaneously in a very short time." (Oscherwitz Dep. at 14:10-14.)

## LEGAL STANDARD

The summary judgment procedure is a method for promptly disposing of actions. *See* FED. R. CIV. PROC. 56. The judgment sought will be granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c). "[A] moving party without the ultimate burden of persuasion at trial [] may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant meets its burden, the nonmoving party must come forward with specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, the nonmoving party may not rest on his pleadings. He "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita*, 475 U.S. at 587 ). Summary judgment is therefore not

3

1  appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary
2  facts . . . ." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

**ANALYSIS**

In their Motion, Defendants contend that they are entitled to summary judgment on all of Plaintiffs' claims. Defendants assert that they had probable cause to arrest Plaintiff, did not use excessive force, and that, as a matter of law, they are not liable for deliberate indifference because Plaintiffs have not shown that Defendants knew that Plaintiff needed medical attention such that they could be found to have consciously disregarded that need. Defendants further argue that are entitled to qualified immunity.

**I.     False Arrest**

The Fourth Amendment proscribes "unreasonable searches and seizures." *Id*. (citing U.S. CONST. amend. IV.) Here, Plaintiff contends that his Fourth Amendment rights were violated when he was arrested. Defendants argue that they are entitled to qualified immunity because they reasonably believed there was probable cause to arrest Plaintiff. The Court agrees with Defendants.

Qualified immunity applies to claims of unconstitutional arrest if the arresting officers had *arguable* probable cause to arrest. *Anderson v. Creighton*, 483 U.S. 635 (1987). *Actual* probable cause is not necessary. *Id*. "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (citation omitted). An arresting police officer will only be denied qualified immunity where probable cause is so lacking as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U.S. 335, 344-345 (1986).

Here, Defendants contend, and the Court agrees, that they had probable cause to arrest Plaintiff. The evidence before the Court demonstrates that Plaintiff obstructed traffic by crossing against a red light in the Defendants' presence. It is undisputed that Plaintiff blocked a taxi cab from proceeding for some period of time. Thus, Defendants arguably had probable cause to arrest Plaintiff on suspicion of obstructing a public street, a misdemeanor under Cal. Penal Code § 647c.

4

1   This violation would have permitted a custodial arrest under the Fourth Amendment.[3] *See Atwater*
2   *v. Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an
3   individual has committed even a very minor criminal offense in his presence, he may, without
4   violating the Fourth Amendment, arrest the offender."). Thus, the Court **GRANTS** Defendants'
5   motion for summary judgment on Plaintiff's federal and state causes of action for false arrest.

**II.    Plaintiffs' Excessive Force Claim**

Plaintiffs' first cause of action alleges that Defendants are liable, pursuant to 42 U.S.C. § 1983, for the use of excessive force against Plaintiff. Defendants argue that Plaintiffs' excessive force claim against the officers should be summarily adjudicated because the evidence shows that excessive force was not used.[4]

A claim that police officers used excessive force during an arrest is analyzed under the framework set forth by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The test is the Fourth Amendment's objective reasonableness standard – whether the officers' actions were objectively reasonable under the circumstances confronting them "judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Id*. at 396-97. "That analysis requires balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[3] Similarly, Plaintiff's state law claim for false arrest fails. The "immunity" standard under California law is similar to the federal standard. California Penal Code § 847 states that "no cause of action shall arise against any peace officer . . . for false arrest . . .[when] the peace officer at the time of the arrest has reasonable cause to believe the arrest was lawful." As stated, a reasonable officer could have believed that probable cause to arrest Plaintiff existed.

[4] At oral argument, Defendants' stated they were not seeking summary judgment on Plaintiff's excessive force claim as it relates to the tackling of Plaintiff. Accordingly, Defendants' motion for summary judgment on the excessive force claim as it relates to the tackling of Plaintiff is **DENIED**.

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The United States Supreme Court noted in *Graham* that:

> 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

*Id*. (citation omitted).

The Ninth Circuit has consistently held that whether excessive force was used by police officers in a given situation is a question of fact for the jury. *Drummond*, 343 F.3d at 1056 (stating that assessing whether police officers' use of force was reasonable "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly"). To defeat summary judgment, a plaintiff need only show that a reasonable jury could find that the officers' use of force was excessive. *Lolli v. County of Orange*, 351 F.3d 410, 416 (9th Cir. 2003).

Plaintiff alleges that Defendants over-tightened his handcuffs and refused to loosen them. Courts have recognized that excessively tight handcuffing can constitute a Fourth Amendment violation. *See, e.g., Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *LaLonde v. County of Riverside,* 204 F.3d 947, 960 (9th Cir. 2000). However, in those cases, the plaintiffs either suffered damage to their wrists as a consequence of the handcuffs or the plaintiffs complained to the officers about the handcuffs being too tight. *See Wall*, 364 F.3d at 1109-1110, 1112; *LaLonde*, 204 F.3d at 952, 960. Here, there is no evidence of a physical manifestation of injury to Plaintiff from the handcuffs. Further, Plaintiff testified that he thought he complained to the police officers about the handcuffs being too tight. However, such speculation is insufficient to raise a genuine issue of material fact. It is also not clear whether Plaintiff complained to Defendants about the handcuffs, or rather complained to other police officers at the scene.

Regarding the two-piece physical restraint used on Plaintiff, it is undisputed that Plaintiff

was not injured by the use of a nylon cord to tie his ankles or a nylon mesh blanket wrapped around his legs. Plaintiff does not allege that the manner in which the restraints were applied were painful. Furthermore, the restraints were promptly removed when Plaintiff arrived at the county jail. And, in any event, Plaintiff testified that he did not know what police officers placed him in the restraint. Thus, the evidence, viewed in the light most favorable to the plaintiff, does not support a reasonable inference that Defendants used excessive force when placing Plaintiff is the physical restraint.

In sum, Defendants' motion of summary judgment on the excessive force claim as it relates to the handcuffing and physical restraint of Plaintiff is **GRANTED**.

### III.   Denial of Medical Care

Plaintiff alleges state and federal claims based on deliberate indifference to medical needs. These claims are without merit. To survive summary judgment on a deliberate indifference claim, a plaintiff must demonstrate that there is a triable fact regarding: (1) the seriousness of the detainee's need; and (2) whether the officers knew of and disregarded an excessive risk to the detainee's health and safety. *Palacios v. City of Oakland*, 970 F. Supp. 732, 741 (N.D. Cal. 1997). Plaintiff admitted that he never requested any medical care and his medical examination two days after the incident revealed only superficial injuries. Therefore, Plaintiff has not raised a genuine issue of material fact regarding whether Defendants knew of and disregarding an excessive risk to Plaintiff's health and safety. Defendants' motion for summary judgment on Plaintiff's deliberate indifference claims is **GRANTED**.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment on the excessive force claim as it relates to the tackling of Plaintiff. The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's false arrest claims, deliberate indifference claim, and excessive force claims as it relates to the handcuffing and physical restraint of Plaintiff.

**IT IS SO ORDERED.**

Dated: May __27__, 2005

\_\_/s/_____
MARTIN J.
UNITED STATES DISTRICT JUDGE

